Cite as 2025 Ark. 27
# SUPREME COURT OF ARKANSAS
No. CR–24–223

| | | |
|---|---|---|
| | | **Opinion Delivered:** April 3, 2025 |
| DEAN LEROY MEACHAM | | |
| | APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72CR-22-860] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE MARK LINDSAY, |
| | APPELLEE | JUDGE |
| | | AFFIRMED. |

**SHAWN A. WOMACK, Associate Justice**

Dean Meacham was convicted of three counts of rape of a minor victim (MV), his daughter. He was sentenced to three concurrent life sentences. Meacham asks this court to reverse his convictions for any one of the following four reasons. He argues the circuit court erred in: (1) allowing hearsay testimony from Children's Safety Center forensic interviewer Debbee Deckard; (2) allowing testimony from Jessica Faamafi, MV's mother, commenting on the credibility of a witness who hadn't testified; (3) allowing testimony from Jessica Faamafi related to Meacham videoing MV naked in the shower in violation of Ark. R. Evid. 404(b); and (4) denying Meacham's motion for mistrial related to MV's reference to gender-identity issues in connection with Meacham's abuse. We affirm.

### I. *Facts and Procedural Background*

Dean Meacham began raping MV when she was approximately nine years old. She disclosed Meacham's sexual abuse at age thirteen in April 2022. Following the disclosure,

the State charged Meacham with three counts of rape. MV first disclosed the abuse in a letter to her mother, Jessica Faamafi. The letter detailed the years of rape and sexual abuse committed by Meacham. Although this letter was lost, MV claimed that Meacham forcefully inserted his penis into her vagina, anus, and mouth several times, often ejaculating in her mouth and anus. She said that at other times, Meacham would ejaculate on the carpet.

After reading this letter, Faamafi reported her daughter's disclosure to the police. MV then participated in a forensic interview with Children's Safety Center forensic interviewer Debbee Deckard. After the interview, it was determined that MV would benefit from a sexual-assault exam. Law enforcement officers who observed the interview subsequently seized evidence from Meacham's home, including MV's bedsheets. The Arkansas State Crime Laboratory confirmed the presence of Meacham's semen on those bedsheets.

Based on this testimony and forensic evidence, the State searched for Meacham to arrest him for the rape of MV. Yet Meacham could not be located. Ultimately, the State received assistance from the United States Marshals Service, which located Meacham in California on April 18, 2022, and subsequently brought him into State custody.

Prior to trial, Meacham's counsel filed a motion in limine to exclude evidence related to Meacham videoing MV naked in the shower.[1] Meacham claimed this violated Ark. R. Evid. 404(b). A hearing was held, and the circuit court denied Meacham's motion. The

---

[1]Although Meacham's motion in limine sought exclusion of other evidence, the evidence related to this alleged video is the only evidence relevant to Meacham's appeal.

circuit court found that testimony of that nature was admissible under the pedophile exception to Rule 404(b) because it was probative as to whether Meacham possessed a depraved sexual instinct, citing *Mason v. State*, 2009 Ark. App. 598, 330 S.W.3d 445; *Williams v. State*, 374 Ark. 282, 287 S.W.3d 559 (2008). The circuit court also found that the testimony was probative of Meacham's motive, opportunity, intent, preparation, plan, and absence of mistake or accident, and the risk of unfair prejudice did not outweigh its probative value.

The case went to trial in January 2024. The State presented forensic evidence and testimony from several witnesses. Meacham's counsel objected at trial to the admissibility of certain testimony from Debbee Deckard, Jessica Faamafi, and MV.

At trial, Debbee Deckard was questioned by the State about whether MV disclosed sexual abuse by her father. Meacham's counsel objected, claiming the answer solicited would be hearsay. The State argued that this question was already admissible based on the previous testimony of Sergeant Jones. It also argued it was relevant to the course of conduct that Deckard pursued after interviewing MV; thus, the statement was not being elicited to prove the truth of the matter asserted (that Meacham raped his daughter) but only to prove the statement was made. The circuit court overruled the objection. Deckard then stated that MV had disclosed sexual abuse by her father.

Next, Jessica Faamafi was questioned by the State about whether she had any suspicions that Meacham was sexually abusing MV. In response, Faamafi said she did not have any suspicions until MV told her the truth one day. Meacham's counsel did not object at this point. Faamafi then discussed a letter she received from MV detailing the abuse. The

3

State then asked her questions about Meacham's work schedule and who watched the children. The State then redirected its questioning to the letter Faamafi mentioned, asking her how the letter made her feel. Faamafi answered that her heart broke because she knew her child was telling the truth. At this point, Meacham's counsel objected, arguing that Faamafi testified to the veracity of a claim that had not been made yet and on the credibility of a witness who had not testified. The circuit court overruled the objection.

Faamfai was also questioned about an alleged video Meacham took of MV naked in the shower. Meacham's counsel objected, arguing the question was prejudicial to Meacham. Once more, the circuit court overruled the objection due to the pedophile exception to Rule 404(b). Faamafi then answered that Meacham had used his cellphone to take a video of MV naked in the shower.

The last witness to testify at trial was MV. At one point, she was questioned by the State regarding her gender identity, including whether she discussed it with her father and, if so, what his reactions were. At this point, Meacham's counsel objected, arguing the testimony was irrelevant. The State countered that the testimony pertained to the abuse MV endured and was therefore relevant. The circuit court sustained the objection on the grounds that Meacham's reason for raping his daughter (her gender-identity issues) was irrelevant to whether he did, in fact, rape her. Put differently, the circuit court said it was not an element of the crime of rape. Thus, the circuit court said it would permit the State to ask only whether the abuse got worse at some point, but it could not follow up and elicit a response concerning the reason the abuse got worse.

4

The State then asked whether there was a point in time when the abuse got worse, and MV responded, "Yes, once I had come out as—". The State immediately stopped MV and told her she only needed to provide a yes or no answer. Meacham's counsel then approached the bench and requested a mistrial or an admonition to the jury. The request for a mistrial was denied, but the court said it may consider a proffer to the jury that defense counsel would prepare. The proffer was ultimately rejected because the court found it to be improperly written and because the answer did not prejudice Meacham. The Washington County jury then convicted Meacham on all three counts of rape. This appeal followed.

## II. *Discussion*

On appeal, Meacham alleges four independent grounds for reversal. He claims the circuit court erred in (1) allowing hearsay testimony from Children's Safety Center forensic interviewer Debbee Deckard; (2) allowing testimony from Jessica Faamafi, MV's mother, commenting on the credibility of a witness who hadn't testified; (3) allowing testimony from Jessica Faamafi related to Meacham videoing MV naked in the shower in violation of Ark. R. Evid. 404(b); and (4) denying Meacham's motion for mistrial related to MV's reference to gender-identity issues in connection with Meacham's abuse. On all counts, Meacham has failed to show that the circuit court abused its discretion, and his convictions are affirmed.

## A. Evidentiary Issues

5

The proper standard of review for a circuit court's evidentiary ruling is abuse of discretion.[2] Abuse of discretion is "a high threshold that does not simply require error in the circuit court's decision, but requires that the circuit court act improvidently, thoughtlessly, or without due consideration."[3] Even if some error occurs, it is not reversible unless the appellant also demonstrates that he was prejudiced by it.[4]

i. *Testimony of Debbee Deckard*

Meacham claims the circuit court abused its discretion when it allowed Debbee Deckard to testify that MV disclosed to her that Meacham had sexually abused her. Meacham claims this statement was inadmissible hearsay because it was offered to prove that Meacham did, in fact, sexually abuse and rape MV. He is mistaken. Contrary to Meacham's claim, Deckard's statement was offered to show Deckard's course of conduct in conducting a forensic interview.

Hearsay is a statement, other than one made by the declarant while testifying at trial, offered to prove the truth of the matter asserted.[5] Generally, hearsay statements are inadmissible.[6] There are, however, several exceptions to the inadmissibility of hearsay statements found in Ark. R. Evid. 803 and 804.

---

[2]*Bragg v. State*, 2023 Ark. 66, at 7, 663 S.W.3d 375, 380.

[3]*Threadgill v. State*, 347 Ark. 986, 993, 69 S.W.3d 423, 428 (2002).

[4]*Bishop v. State*, 2023 Ark. 150, at 10, 675 S.W.3d 869, 876.

[5]Ark. R. Evid. 801(c).

[6]Ark. R. Evid. 802.

Here, the statement given by Deckard was simply not hearsay. Thus, it is of no consequence that the statement in question was not offered by MV because it was not offered to prove that Meacham raped her. Instead, it was offered to establish Deckard's course of conduct when conducting MV's interview at the Children's Safety Center. Such testimony is admissible as nonhearsay. *See Decay v. State*, 2009 Ark. 556, at 12, 352 S.W.3d 319, 328 (holding testimony that goes to a witness's course of conduct rather than to prove the truth of the matter asserted is admissible as nonhearsay). Because this statement was admissible nonhearsay, the circuit court did not abuse its discretion in making this evidentiary ruling and allowing this testimony.

ii. *Testimony of Jessica Faamafi*

Next, Meacham claims the circuit court abused its discretion when it allowed testimony from Jessica Faamafi regarding (1) the credibility of MV and (2) Meacham taking a video of MV naked in the shower. The first issue is unpreserved for appellate review, and the latter is admissible under the pedophile exception to Ark. R. Evid. 404(b).

With respect to the first alleged evidentiary violation, the law is well settled that to preserve an issue on appeal, a defendant must object at the first opportunity and renew the objection each time the issue is raised.[7] Here, Meacham's trial counsel failed to object at the first opportunity to Faamafi's testimony regarding MV "telling the truth". Rather, it was not until after Faamafi's second reference to MV telling the truth that defense counsel

---

[7]*Scarbrough v. State*, 2024 Ark. 71, at 15, 687 S.W.3d 557, 566–67 (citing *Duck v. State*, 2018 Ark. 267, at 9, 555 S.W.3d 872, 877; *Chunestudy v. State*, 2012 Ark. 222, at 9, 408 S.W.3d 55, 61).

objected. Because Meacham's trial counsel did not object at the first opportunity, his argument is not preserved for appellate review.

We now turn to Meacham's claim that Ark. R. Evid. 404(b) prohibited testimony from Faamafi regarding Meacham taking a video of MV naked in the shower. Meacham's claim here likewise fails because this testimony was admissible under the pedophile exception to Rule 404(b).

Generally, evidence of a person's character is not admissible to prove he or she acted in conformity with his or her character on a particular occasion.[8] However, when a charge concerns the sexual abuse of a child, evidence of other crimes, wrongs or acts that show motive, intent or planning is admissible under the pedophile exception to Rule 404(b).[9] The exception applies when the charge is sufficiently similar to the evidence to be introduced such that it shows a proclivity for a depraved sexual instinct.[10] It also applies to show the familiarity of the parties, disposition, and antecedent conduct toward one another and to corroborate the testimony of the victim.[11] There must, however, be an intimate relationship between the perpetrator and the victim for the exception to apply.[12] In

---

[8]Ark. R. Evid. 404(b).

[9]*Holland v. State*, 2015 Ark. 341, at 7, 471 S.W.3d 179, 184 (citing *Fields v. State*, 2012 Ark. 353).

[10]*Id.* (citing *Kelley v. State,* 2009 Ark. 389, 327 S.W.3d 373; *Jeffries v. State*, 2014 Ark. 239, 434 S.W.3d 889; *Eubanks v. State,* 2009 Ark. 170, 303 S.W.3d 450).

[11]*Id.* (citing *Fields*, *supra*).

[12]*Id.* (citing *Chunestudy v. State*, 2012 Ark. 222, 408 S.W.3d 55).

addition, evidence admitted pursuant to Rule 404(b) must not be too separated in time, making the evidence unduly remote.[13] Finally, even if evidence falls into this exception, it is still subject to exclusion under Rule 403 if its probative value is substantially outweighed by unfair prejudice.[14]

Here, all elements of the pedophile exception to Rule 404(b) are satisfied. First, Meacham was charged with the rape of his daughter, MV; thus, an intimate relationship exists between the perpetrator and victim in this case. Next, videoing a naked minor in the shower shows a proclivity for a depraved sexual instinct—specifically, that Meacham had a deviate sexual interest in his minor daughter. This evidence of another wrong is sufficiently similar to other forms of sexual abuse Meacham committed, ultimately leading the State to charge him with the offense of rape of MV. Finally, this evidence is not unduly remote such that it requires exclusion. Arkansas appellate courts have held that the pedophile exception to Rule 404(b) applies to acts that occurred eleven, fourteen, and even twenty-eight years apart.[15] The alleged videoing of MV took place when she was eight years old, the rapes began when she was nine years old, the rape charges were filed when she was thirteen years old, and she testified at trial when she was fifteen years old. Accordingly, there was a gap of between one and five years between the videoing of MV in the shower

---

[13]*Id.* (citing *Brown v. State*, 2012 Ark. 399, 424 S.W.3d 288).

[14]*Holland*, 2015 Ark. 341, at 8, 471 S.W.3d at 185 (citing *Hernandez v. State*, 331 Ark. 301, 962 S.W.2d 756 (1998)).

[15]*See Nelson v. State*, 365 Ark. 314, 229 S.W.3d 35 (2006); *Holland*, 2015 Ark. 341, at 8–9, 471 S.W.3d at 185; *Baumann v. State*, 2018 Ark. App. 564, at 6–7, 566 S.W.3d 494, 499.

and the acts of raping MV that Meacham was ultimately charged for.  For these reasons, the pedophile exception to Rule 404(b) clearly applied to this testimony from Faamafi.[16]

Having determined that the pedophile exception applies, we merely need to weigh the probative value of Faamafi's testimony against unfair prejudice.  In this case, the

---

[16]The concurrence claims it cannot join the majority because it, "unnecessarily disclosed . . . the child's relationship with the defendant, the child's parent with the same surname, and the clear ability to identify the year of the child's birth." Conc. Op. at 1, ¶ 1.

Despite the concurrence's claims to the contrary, there was nothing unnecessary about the "disclosures" in this case.  The defendant was charged with rape pursuant to Ark. Code Ann. § 5-14-103(a)(3)(A).  To be charged under this statute, the victim must be less than fourteen years old.  As a result, the age of the victim is an element of the underlying offense.  Accordingly, we are hard pressed to find that it is unnecessary to discuss the age of the victim in this case.  Likewise, the pedophile exception to Rule 404(b) only applies when an intimate relationship exists between the perpetrator and the victim.  For this reason, we found it necessary to discuss the relationship between Dean Meacham and MV.

To be clear, the majority's discussion of these "identifiers" if far from atypical.  In fact, the concurrence has written or joined countless opinions (three this very term) that identified a minor victim's: (1) age; (2) relationship to the defendant; (3) sex; or (4) parent or family member's surname. *See, e.g., Nelson v. State*, 2025 Ark. 22, at 1, 705 S.W.3d 876, 877; *De la Garza v. State*, 2025 Ark. 10, at 1, 704 S.W.3d 627, 630; *Woods v. State*, 2025 Ark. 9, at 1, 704 S.W.3d 301, 302; *Doucoure v. State*, 2024 Ark. 162, at 1, 698 S.W.3d 643, 644 (Wood, J.) ("Doucoure was charged with and convicted of three counts of raping his minor child.  At trial, the victim testified that Doucoure had raped her many times."); *Turnbo v. State*, 2021 Ark. 166, 629 S.W.3d 797 (Wood, J.) (discussing the minor victims age and gender); *Smith v. State*, 2016 Ark. 417, 1, 504 S.W.3d 595, 596 (Wood, J.) (discussing the gender of the victim and intimate relationship between the defendant and the victim regarding the pedophile exception to Rule 404(b)). *See also Kimball v. State*, 2024 Ark. 3, at 2, 2024 WL 188093 ("Kimball was charged by information with the rape of three girls, VC, MK, and LB, prior to 2010.  All the alleged victims are Kimball's granddaughters, and all the girls were under the age of fourteen at the time."); *McCauley v. State*, 2023 Ark. 68, at 1, 663 S.W.3d 383, at 384 ("Appellant James McCauley appeals a Hot Spring County Circuit Court order convicting him of the rape of his son, a minor child"); *Wilder v. State*, 2023 Ark. 137, 675 S.W.3d 424 (discussing the age of the minor victims when they were sexually abused; the age of the victims when they gave their interviews to law enforcement, the gender of the minor victims, and the relationship between the defendant and the minor victims); *Hartley v. State*, 2022 Ark. 197, at 1, 654 S.W.3d 802, at 804 ("MC, who was eleven years old at the time of trial, testified that she knew Hartley because he had been her mother's boyfriend.").

evidence's probative value was not outweighed by any unfair prejudice. Indeed, evidence that MV was sexually abused was already before the jury by way of forensic and testimonial evidence. What's more, evidence that Meacham sexually abused MV's half-sister was also before the jury. Accordingly, there was little (if any) prejudice to Meacham in admitting this evidence under the pedophile exception to Rule 404(b). Thus, its probative value—showing Meacham's deviate sexual interest in MV—warranted its admission.

Because the pedophile exception to Rule 404(b) applied to Faamafi's testimony and because the probative value of the testimony outweighed any unfair prejudice, the circuit court did not abuse its discretion in making this evidentiary ruling and allowing this testimony.

## B. Motion for Mistrial

For Meacham's final point on appeal, he claims that the circuit court abused its discretion when it denied his motion for a mistrial after MV testified that Meacham's sexual abuse got worse after she "came out." He likewise claims it was an abuse of discretion when the circuit court failed to admonish the jury on this issue.

Here, Meacham raises an incoherent argument that is outside the scope of the objection made by Meacham's trial counsel. Below, trial counsel argued that "come out was common parlance about some form of sexual orientation or identity" and "directly violated the court's order . . . not to get into this." Now, Meacham claims, "in the climate we now live in," [MV]'s use of the phrase "come out painted a picture that he beat his child because of [MV]'s sexuality and gender identification." Relatedly, he claims the circuit

11

court's refusal to admonish the jury was an abuse of discretion because "he was charged with rape, not battery."

Parties are bound by the scope and nature of the objections and arguments presented at trial.[17] Accordingly, this court will not entertain these new arguments raised by Meacham on appeal. In any event, because the issue was properly preserved, we will address it in the scope and nature of the objections and arguments below.

Mistrials are not to be granted lightly.[18] Declaring a mistrial is an extreme and drastic remedy that is appropriate only when the error at hand is so prejudicial that justice cannot be served by continuing the trial or when the fundamental fairness of the trial has been manifestly affected.[19] A circuit court has wide discretion in granting or denying a motion for a mistrial, and absent an abuse of that discretion, the circuit court's decision will not be disturbed on appeal.[20] We consider several factors in determining whether a circuit court abused its discretion in denying a mistrial motion, such as whether the prosecutor deliberately induced a prejudicial response and whether an admonition to the jury could have cured any resulting prejudice.[21] An admonition to the jury usually cures a prejudicial

---

[17]*Moore v. State*, 372 Ark. 579, 585, 279 S.W.3d 69, 74 (2008).

[18]*Barefield v. State*, 2024 Ark. 141, at 11, 696 S.W.3d 822, 830 (citing *McClendon v. State*, 2019 Ark. 88, at 6, 570 S.W.3d 450, 454).

[19]*Id.*

[20]*McClendon v. State*, 2019 Ark. 88, at 6–7, 570 S.W.3d 450, 454 (citing *Armstrong v. State*, 366 Ark. 105, 113, 233 S.W.3d 627, 634 (2006)).

[21]*Id.*

statement unless it is so patently inflammatory that justice could not be served by continuing the trial.[22]

Here, the circuit court properly exercised its discretion in denying Meacham's mistrial motion, as the challenged testimony was an isolated and unfinished statement that the State promptly curtailed. The circuit court found that the State had not violated its order and had not attempted to elicit improper testimony regarding MV's gender identity. Additionally, the circuit court determined that the question itself did not solicit a response about her identity and, following precedent, considered the context before rejecting the mistrial request. Likewise, the circuit court did not abuse its discretion in denying Meacham's request for an admonition, recognizing that highlighting MV's brief statement could have drawn unnecessary attention to it. Given the circuit court's superior position to assess the jury's perception and the passage of time between the testimony and the proposed cautionary instruction, it reasonably concluded that no prejudice resulted. For these reasons, the circuit court's denial of Meacham's mistrial motion and request to admonish the jury was not an abuse of discretion.

### III. *Conclusion*

The circuit court did not abuse its discretion in allowing the testimony of Debee Deckard and Jessica Faamafi. Nor did it abuse its discretion in denying Meacham's motion for mistrial and related request to admonish the jury. For these reasons, his convictions are affirmed.

---

[22]*Id.* (citing *Sylvester v. State*, 2016 Ark. 136, at 8, 489 S.W.3d 146, 151).

13

## IV. *Rule 4-3(a) Requirement*

Meacham received three concurrent sentences of life imprisonment, so the record has been reviewed for all errors prejudicial to him as required by Arkansas Supreme Court Rule 4–3(a). No reversible error was found.

Affirmed.

Special Justice MARK ALLISON joins with the exception of footnote 16.

WOOD, J., concurs.

BRONNI, J., not participating.

**RHONDA K. WOOD, Justice, concurring.** I agree with the majority's legal reasoning and conclusion. But I write separately because of the lack of care given to protecting the identity of the minor victim. M.V. isn't named, but unnecessarily disclosed are the child's relationship with the defendant, the child's parent with the same surname, and the clear ability to identify the year of the child's birth. Anyone with a device and an internet connection can easily identify the victim. None of these details were needed for our court's decision.

As a court we have chosen not to have cases with minor victims filed under seal. Sealing would protect the perpetrators from the infamy of their crimes and not serve the public. In 2022, we took the step of requiring that the minor victim be identified only by the initials "M.V."[1] Yet using the pseudonym "M.V." hardly matters if, as one appellate

---

[1] *See* Ark. Sup. Ct. R. 6–3(b).

judge pointed out, "the child shares a surname such as 'Mizell' or 'Fornash' with her parents" and that surname is used.[2]

Our appellate opinions are publicly accessible on our website and others. This leaves the details of these horrific violations of our community's most vulnerable victims preserved publicly in the pages of our opinions. We are a "leading purveyor of incredibly intimate and embarrassing information about both adults and children who happen to be pulled into the judicial system."[3] This means we have a responsibility to show great sensitivity and caution in our discussion of these depraved acts (particularly those descriptions not directly relevant to our legal conclusions) and take steps to preserve the anonymity of the children involved in the case. I fear that by failing to adequately do so today, we inadvertently re-victimize a child who has already suffered more than anyone should. As one appellate judge explained, we simply need to be purposeful in how we handle these matters in our appellate opinions. As a court, we can comb through each and remove as many unintended identifiers as possible.

For these reasons, I concur.

*The Law Offices of J. Paul Coleman*, by: *Jay Paul Coleman*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.

---

[2]Joel M. Schumm, *No Names, Please: The Virtual Victimization of Children, Crime Victims, the Mentally Ill, and Others in Appellate Court Opinions*. 42 Ga.L.Rev. 471, 498 (2008).

[3]*Id*. at 474.